# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TRACY E. KELTY,                                    Case No. 1:12-cv-272
     Plaintiff,                                Barrett, J.
                                                   Litkovitz, M.J.

     vs.

COMMISSIONER OF                                    **REPORT AND**
SOCIAL SECURITY,                                   **RECOMMENDATION**
     Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI).   This matter is before the Court on plaintiff's Statement of Errors (Doc. 6) and the Commissioner's response in opposition.   (Doc. 9).

## I.  Procedural Background

Plaintiff filed applications for DIB and SSI in April 2008, alleging disability since March 18, 2008, due to left arm, left leg, back and neck pain, an adrenal tumor, blood clots, and anxiety. Plaintiff's applications were denied initially and upon reconsideration.   Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Larry A. Temin.   Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing.   On September 21, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications.   Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since March 18, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: status post motor vehicle accident on March 18, 2008, resulting in left tibula/fibula fracture with surgery, a left humerus fracture with surgery, and cervical and thoracic vertebrae fractures with surgery; lumbosacral degenerative disc disease; thoracic spine degenerative disc disease; and anxiety disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the [plaintiff] can perform work activities except as follows: The [plaintiff] can lift and/or carry up to 10 pounds occasionally and 5 pounds frequently; she can stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The [plaintiff] can only occasionally stoop, kneel, crouch, and climb ramps or stairs, and should not crawl, climb ladders, ropes, or scaffolds, or work at unprotected heights or work around hazardous machinery. The [plaintiff] is able to remember and carry out detailed, but uninvolved, instructions, and is able to make only simple work-related decisions. Her job should not require more than ordinary and routine changes in the work setting or duties.

6. The [plaintiff] is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1981 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and  416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 18, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-18).

### C.   Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.   *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1]Plaintiff's past relevant work was as a nurse's aide, shipping and receiving clerk, and shirt presser.  (Tr. 16, 156, 181).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.   Specific Errors

Plaintiff raises the following assignments of error: (1) the ALJ erred in assessing the physical limitations associated with plaintiff's neck and left shoulder, arm, and hand impairments; (2) the ALJ erred in weighing the medical opinions of record and in formulating plaintiff's residual functional capacity (RFC); (3) the ALJ erred by not finding a closed period of disability; (4) the ALJ erred by discounting plaintiff's credibility; and (5) the ALJ erred by

presenting an improper hypothetical question to the VE.   As plaintiff's first and second asserted errors relate to the ALJ's RFC formulation, the Court will address them together.

   1. __The ALJ's RFC determination is supported by substantial evidence.__

   Plaintiff asserts the ALJ erred in formulating her RFC by: (1) not including supported limitations resulting from her severe neck and left arm, shoulder, and hand impairments; (2) not giving controlling weight to the opinion of her treating pain specialist, Jose Martinez, M.D.; and (3) failing to specify which medical opinion supported the assigned RFC for sedentary work.

   **a.     Neck and left upper extremity impairments**

   The relevant medical evidence is as follows.   Plaintiff sustained cervical and thoracic spine fractures, fractures of her left leg (tibia, fibula) and arm (humerus), subdural subarachnoid hemorrhage, and splenic lacerations as a result of a March 18, 2008 car accident.   *See* Tr. 233-328.   Plaintiff was admitted to the hospital and following several surgeries, including a humerus open reduction, internal fixation and fusion surgeries at C5-C7 and T11-L1, was discharged on March 24, 2008 in stable, nonambulatory condition.   (Tr. 234).   Plaintiff received ongoing care at a nursing facility until her April 12, 2008 discharge, after which she underwent physical therapy and followed up at the Orthopaedic Outpatient Center at the University Hospital.   (Tr. 329-433; 435-44; 457-573).

   William Klein, M.D., treated plaintiff from July 1, 2008 through October 7, 2008.   (Tr. 621-28).   On July 24, 2008, Dr. Klein noted that plaintiff was complaining of severe back and neck pain and stated that it was "unclear to [him] why she would be in this much pain."   (Tr. 625).   At an August 21, 2008 follow-up, plaintiff reported that her "spine pain in the neck" was "pretty much gone" and there was no mention of left arm pain.   (Tr. 626).   In October 2008,

6

plaintiff reported pain in her "left shoulder only with motion" and intermittent back pain.   (Tr. 627).   Examination revealed tenderness and limited range of motion in the left shoulder, but with good strength.   *Id.*   Dr. Klein continued to state that it was unclear why plaintiff was having neck and back pain.   (Tr. 628).   In November 2011, Dr. Klein completed a medical report for disability purposes and when asked to describe any limitations plaintiff suffers from as a result of her impairments, he stated only that plaintiff is "unable to weight bear [at] all on [her] left leg."   (Tr. 623).

Plaintiff presented to the emergency room at Mercy Franciscan on October 27, 2008 with complaints of back and neck pain but no mention of left arm pain; physical examination results were unremarkable.   (Tr. 688-90).

Plaintiff began treating with a pain management specialist, Jose Martinez, M.D., in December 2008.   Her initial complaints included pain to her back, left arm and leg.   (Tr. 812-14).   X-rays of the cervical spine taken on January 13, 2009 showed multi-level instability in the neck, particularly at C2-3 and C3-4.   (Tr. 817).   When seen the following day by a certified nurse specialists (CNS), Joan Steiner, plaintiff was noted as "doing okay."   (Tr. 810). Physical examination in March 2009 revealed weakness in plaintiff's left side and plaintiff reported constant cervical pain ranging from 5/10 to 9/10.   (Tr. 806-07).   Treatment notes from April and May 2009 contain similar findings, but without any complaints of pain or findings of weakness in the left shoulder, elbow, wrist, or hand.   (Tr. 802-05).   From June through September 2009, examinations revealed normal muscle strength throughout and no left upper body weakness.   (Tr. 789-801).   However, in October 2009, plaintiff was noted as having limited range of motion with pain in the left shoulder, but no weakness.   (Tr. 788-89).   Plaintiff

reported in November and December 2009 that she had left shoulder pain; December 2009 and January and February 2010 examinations revealed tenderness in the shoulder but full range of motion.   (Tr. 765, 770, 775, 781, 786).   Throughout this treatment, plaintiff consistently reported pain in her cervical spine (Tr. 759-806), but examinations revealed only occasional range of motion issues.   (Tr. 770, 775, 781).   In August 2010, Dr. Martinez completed a "Physician's Questionnaire" and opined that plaintiff is unable to engage in full-time employment given her clinical history of status post-surgery for her left leg, spine, and left shoulder.   (Tr. 823).   Dr. Martinez opined that plaintiff's "clinical status is serious . . . given her long-standing pain due to her injuries.   Her prognosis is guarded requiring long-term treatment." *Id*.

Plaintiff attended six physical therapy sessions for her neck and left shoulder in March and April 2009.   (Tr. 737-54).   On March 6, 2009, when initially evaluated, plaintiff rated her pain as an 8/10 on activity and examination revealed decreased range of motion in her left shoulder and pain on palpation in her neck and left shoulder.   (Tr. 737-40, 743).   The physical therapist reported that plaintiff was discharged from physical therapy in April 2008 with a shoulder status of 1-2/10.   The therapist noted that plaintiff was inconsistent with attendance and did not completed physical therapy.   (Tr. 754).   Plaintiff testified at the ALJ hearing that she has difficulty lifting a gallon of milk, can carry light groceries, and can reach with her right arm but not her left.   (Tr. 37-38, 42).

The ALJ determined that plaintiff was capable of performing a reduced range of sedentary work and limited her to "lift[ing] and/or carry[ing] up to 10 pounds occasionally and 5 pounds frequently . . . ."   (Tr. 12).   At the ALJ hearing, the VE testified that an individual with

8

this RFC was capable of performing several unskilled, sedentary jobs, such as nut sorter and table worker, all of which required full use of both hands and arms.   (Tr. 53-54).

Plaintiff argues that although the ALJ recognized that she had severe impairments of "a left humerus fracture with surgery, and cervical and thoracic vertebrae fractures with surgery" resulting from the 2008 motor vehicle accident, he erred by not incorporating any associated limitations when formulating plaintiff's RFC.   Plaintiff asserts she has neck pain and "does not have good use of her left hand and arm."   She alleges these impairments limit her ability to reach, use her hands, and look down, and the ALJ's failure to include these functional limitations in formulating plaintiff's RFC requires reversal.   (Doc. 6 at 3-4).   The Court disagrees.

First, plaintiff's contention that the ALJ "found no work-related limitations" regarding plaintiff's arms and hands misstates the record.   The ALJ discussed the relevant evidence, including plaintiff's testimony, and limited her RFC for sedentary work[1] to lifting 10 pounds occasionally and lifting 5 pounds frequently.   Contrary to plaintiff's assertion, the ALJ explicitly accommodated plaintiff's limitations by including these lifting restrictions.

Second, plaintiff argues the ALJ failed to note x-ray evidence from January 2009 showing multi-level instability in the neck, particularly at C2-3 and C3-4.   (Doc. 6 at 4).   Contrary to plaintiff's argument, the ALJ explicitly acknowledged this evidence in his decision.   (Tr. 15, citing Exh. 24F/60, 62).

Plaintiff also takes issue with the ALJ's statement that x-rays showed plaintiff's fractures are healed in view of the January 2009 x-ray evidence showing instability in the neck.   (Doc. 6 at 4, citing Tr. 15).   The January 2009 x-ray shows "evidence of multilevel instability with

---

[1]"Sedentary work involves lifting no more than 10 pounds at a time . . . ."   20 C.F.R. § 404.1567(a).

flexion and extension view, particularly at the level of C2-3 and C3-4." (Tr. 817). Plaintiff's previous cervical fracture, however, was at C6 for which she underwent a C5-C7 posterior spinal fusion. (Tr. 280). Plaintiff has not cited to evidence showing the fracture at C6 was not healed and the ALJ's determination that plaintiff's fractures have healed is otherwise substantially supported by the record. *See* Tr. 642-43 (September and November 2008 examinations and radiographs revealed no remaining fracture or nonunion post-cervical and thoracic fusion); Tr. 673 (November 2008 x-ray showed plaintiff's proximal humerus to be healing well); Tr. 819 (January 2009 x-ray of thoracic spine showed fixation of T10 through T12 with no acute findings); Tr. 820 (April 2010 x-ray showed "old *healed* fractures" of distal tibia and fibula).[2] The ALJ did not err in his characterization of the evidence regarding plaintiff's healed fractures.

Third, plaintiff claims the January 2009 x-ray showing ongoing instability in her neck, her ongoing neck and shoulder pain, and her limited range of motion findings contradict the ALJ's RFC finding. Yet, plaintiff has failed to identify any medical opinion or clinical findings demonstrating limitations in her upper extremity functioning that are not accounted for by the ALJ's RFC formulation. Plaintiff cites to the evidence discussed above, such as neck and left arm pain and left shoulder tenderness (*see* Doc. 6 at 4, citing Tr. 768), but this evidence does not demonstrate functional limitations beyond those included in the ALJ's RFC. Notably, plaintiff states that it is "hard to reach with her left arm . . . and hard to look down to read" (Doc. 6 at 4), but she does not identify any evidence in support of these limitations aside from her own

---

[2]To the extent plaintiff also contends the ALJ erred by not addressing the evidence related to plaintiff's testimony of neck and shoulder pain (Tr. 38, 45) and Dr. Martinez's findings of limited range of motion (Tr. 804-05), the undersigned finds no error in this regard. The ALJ squarely addressed this evidence in his decision. *See* Tr. 13-15.

testimony.[3]   In the absence of any medical evidence demonstrating greater functional limitations

than those provided for in the RFC formulated by the ALJ, the Court finds no error.

### b. Weight to opinion of treating pain specialist

Plaintiff also argues the ALJ erred by not giving controlling weight to Dr. Martinez's

opinion that she is incapable of full-time employment due to her clinical status and ongoing pain.

"In general, the opinions of treating physicians are accorded greater weight than those of

physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

529-30 (6th Cir. 1997).   Likewise, a treating physician's opinion is entitled to weight

substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d

431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983).   The

weight given a treating physician's opinion on the nature and severity of impairments depends on

whether it is supported by sufficient medical data and is consistent with other evidence in the

record.   20 C.F.R. § 404.1527(c)[4]; *Harris*, 756 F.2d at 431.   If a treating physician's "opinion

on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case," the opinion is entitled to controlling weight.   20

C.F.R. § 1527(c)(2); *see also Walters*, 127 F.3d at 530.   If not contradicted by any substantial

evidence, a treating physician's medical opinions and diagnoses are afforded complete deference.

*Harris*, 756 F.2d at 435.   *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992).

---

[3]Insofar as plaintiff relies on her testimony as evidence supporting greater functional limitations than those provided for by the ALJ, the ALJ reasonably determined that plaintiff's testimony was less than fully credible as discussed *infra*.

[4]Regulations 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012.   The provision governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

In this case, Dr. Martinez opined that plaintiff was incapable of any work whatsoever, including part-time employment. *See* Tr. 12, 823. The ALJ gave "little weight" to Dr. Martinez's assessment, noting that: (1) plaintiff had no orthopedic follow-up after November 2008; (2) the objective evidence demonstrated that plaintiff's fractures had healed; (3) and Dr. Martinez's assessment was contradicted by his treatment records. (Tr. 15). The ALJ's decision giving little weight to Dr. Martinez's opinion is substantially supported by the record.

At the outset, the Court notes the ALJ is not required to accept Dr. Martinez's opinion that plaintiff is unable to engage in part-time or full-time employment. (Tr. 823). Whether a person is disabled within the meaning of the Social Security Act, *i.e.*, unable to engage in substantial gainful activity, is an issue reserved to the Commissioner and a physician's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008) (treating physicians' opinions on issues reserved to Commissioner are never entitled to controlling weight or special significance); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

12

Plaintiff argues the ALJ erred when he found that plaintiff's fractures had healed in light of the January 2009 x-ray evidence showing cervical instability and Dr. Martinez's records showing continued problems into 2010.   (Doc. 6 at 5).   As explained above, the ALJ's finding of healed fractures is supported by substantial evidence despite the 2009 x-ray findings. Additionally, Dr. Martinez's opinion is contradicted by other record evidence, including Dr. Martinez's own treatment notes.   Most notably, Dr. Martinez opined that plaintiff was incapable of even part-time work.   (Tr. 823).   However, plaintiff testified at the ALJ hearing that she was working part-time as a companion (Tr. 30) and Dr. Martinez's own records reflect plaintiff's part-time employment.   (Tr. 761).   The contradiction between Dr. Martinez's opinion regarding plaintiff's functional abilities and plaintiff's own testimony is a legitimate factor for the ALJ to consider.   Likewise, the inconsistency between Dr. Martinez's opinion and his treatment notes supports the ALJ's determination.   The most recent notes from February and March 2010 include examination findings that plaintiff had full muscle strength and a normal gait (Tr. 761, 765), was tolerating her medication well (Tr. 762, 766), and had improvement in her shoulder pain.   (Tr. 765).   Yet, contrary to these findings, Dr. Martinez opined in August 2010 that plaintiff would be unable to work part-time or full-time given her long-standing pain and reliance on heavy narcotic analgesics.[5]   (Tr. 823).   Finally, as the ALJ noted, plaintiff had no orthopedic follow-up after November 2008, which would reasonably be expected given her continued orthopedic complaints.   The ALJ put forth "good reasons" based on the record evidence for rejecting Dr. Martinez's opinion.   *Blakely*, 581 F.3d at 406-07.

---

[5]   The only notes regarding plaintiff's medication throughout all of Dr. Martinez's treatment notes are that the medication was well tolerated and that plaintiff was not experiencing any side effects.   *See*, *e.g.*, Tr. 776, 810.

13

### c. Medical opinion supporting the assigned sedentary RFC

Lastly, plaintiff argues that the ALJ erred in formulating plaintiff's RFC by not identifying the medical opinion "he g[a]ve the most weight to in order to arrive at his [RFC] for sedentary work," asserting that "the Court cannot now review this under [Social Security] Rulings 96-2p and 96-8p."   (Doc. 6 at 6).   Plaintiff appears to contend that the ALJ is required to give the "most weight" or "controlling weight" to one of the medical opinions of record in order for the RFC formulation to be substantially supported and for the Court to meaningfully review the ALJ's decision.   Plaintiff is incorrect.

"Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belong to the Commissioner."   *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (citing former 20 C.F.R. § 404.1527(e)(1)).   The instant record contains only two opinions regarding plaintiff's RFC:   Dr. Martinez's opinion that plaintiff is unable to do any work whatsoever and the opinion of the state agency doctor that plaintiff's physical impairments were not severe because they did not last for 12 consecutive months.   (Tr. 191, 823).   The ALJ declined to adopt either opinion, but instead determined that plaintiff retained the RFC for a limited range of sedentary work.   The ALJ considered and discussed all of the relevant objective, clinical, and opinion evidence, as well as plaintiff's subjective statements regarding her limitations, and reasonably determined plaintiff retained the RFC for sedentary work.   *See* Tr. 12-16.   As discussed above, the medical evidence shows that while plaintiff has ongoing pain, some range of motion difficulties, and objective findings of cervical disc instability, she walks with a normal gait, has full muscle strength, and is tolerating her pain medications well.   The ALJ appropriately considered the entirety of the

14

evidence, gave good reasons for discounting Dr. Martinez's highly restrictive opinion, and reasonably determined that plaintiff has the RFC for a limited range of sedentary work.

For the above reasons, the undersigned finds that the ALJ's RFC formulation is substantially supported and should be affirmed.

## 2. **The ALJ did not err in finding that plaintiff was not disabled for a closed period.**

In the alternative, plaintiff's asserts she is entitled to a closed period of disability. Plaintiff alleges she was unable to work for over 12 consecutive months from March 18, 2008, the alleged onset date, to April 23, 2009, because: (1) she was having ambulation problems and using a crutch up to April 23, 2009; (2) she required five more physical therapy sessions as of April 2009; and (3) she exhibited an antalgic gait on March 16, 2009.   (Doc. 6 at 7).   Plaintiff argues that this evidence demonstrates "impairments and work-related limitations lasting over 12 consecutive months" and with the additional five physical therapy sessions she would have missed too much work per the VE's testimony to maintain full-time employment.   *Id.* Plaintiff's argument is not well-taken.

The VE testified that if an individual missed two to three work days per month, she could not perform the jobs identified by the VE.   (Tr. 51).   Plaintiff's argument is premised on the unfounded assumption that she would be required to engage in physical therapy during work hours, as opposed to non-work hours, an assumption that is not supported by the record.   In addition, plaintiff fails to provide any legal or factual support for her assertion that having physical impairments for over 12 months, as evidenced by her use of a crutch and having an antalgic gait, proves that she is disabled.   The only thing this evidence proves is that plaintiff had severe impairments through this time period.   However, the mere existence of a medically

15

determinable impairment for more than 12 months does not demonstrate that an individual is

disabled.   Plaintiff has not identified any evidence in connection with this assignment of error

which alters the undersigned's recommendation to affirm the ALJ's RFC formulation.

Accordingly, this assignment of error should be overruled.

3.  **The ALJ credibility finding is supported by substantial evidence.**

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant.   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th

Cir. 2007) (citations omitted).   The Social Security regulations describe a two-part process for

assessing the credibility of a claimant's statements about symptoms, including pain.   First, the

ALJ must determine whether the claimant has a medically determinable physical or mental

impairment that can reasonably be expected to produce the symptoms alleged.   Second, the ALJ

must evaluate the intensity, persistence, and functional limitations of those symptoms by

considering objective medical evidence and other evidence, including: (1) daily activities; (2) the

location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and

aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken

to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of

pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other

factors concerning functional limitations and restrictions due to pain or other symptoms.   20

C.F.R. § 404.1529(c); *see also Rogers*, 486 F.3d at 247; Soc. Sec. Rul. 96-7p.   In light of the

ALJ's opportunity to observe the claimant's demeanor, the ALJ's credibility finding is entitled to

deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.

2001); *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).   "If an ALJ rejects a

claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v.*
*Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Plaintiff contends the ALJ erred in not fully crediting her subjective complaints of pain
and reported limitations.   First, plaintiff claims the ALJ failed to discuss the side effects she
experiences from her medications and her other coping methods for dealing with pain as required
by Social Security Ruling 96-7p and 20 C.F.R. § 404.1529.   Plaintiff's contention is flatly
contradicted by the record.   The ALJ's decision summarized plaintiff's testimony as follows:

> [Plaintiff] alleged that she cannot work full time due to back pain and the side
> effects of her medication.   She testified that due to back pain, she can only stand
> for 10 to 15 minutes, and sit for 5 to 10 minutes before she has back cramps and
> she must move around to stretch.   She reported that she cannot walk for long and
> that she walks with a limp because she is walking wrong on her foot and has to go
> back to physical therapy.   [Plaintiff] declared that she cannot bend over and that
> she cannot reach with her left arm due to the limited range of motion; she reported
> difficulty lifting a gallon of milk. . . .   [Plaintiff] testified that after working a
> 4-hour day, she comes home and must take a nap because her medications make
> her drowsy.

(Tr. 13).   The ALJ noted that plaintiff had taken Vicodin, Percocet, and morphine, and utilized a
TENS unit, heat, ice, and muscle cream to treat her pain.   (Tr. 14-15).   The ALJ explicitly
addressed plaintiff's use of medications, her testimony as to its side effects, her need to sit and
stand at will, and her other methods for handling her pain.   *See* Tr. 13-16.   Plaintiff's claim that
"[t]he ALJ erred in failing to consider [these factors]" in determining that plaintiff was capable of
sedentary work is without merit.

Second, plaintiff claims that her medications preclude her from full-time work due to
drowsiness.   While plaintiff identifies a December 3, 2009 note where she reported feeling
sleepy on her medications (Tr. 779), the vast majority of plaintiff's records demonstrate that she
was experiencing no medication side effects.   *See* Tr. 800, 802, 804, 806, 810 (January 2009 to

17

June 2009 treatment notes indicate plaintiff was not experiencing any adverse medication effects).   The ALJ reasonably determined that plaintiff's statements to the contrary were inconsistent with the treatment records.   (Tr. 16).   In light of the inconsistencies between plaintiff's testimony and the medical and other evidence of record, the ALJ's credibility determination in this regard is substantially supported.   *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 546 (6th Cir. 2002) (affirming ALJ's credibility determination where plaintiff's testimony conflicted with medical evidence); *Sass v. Astrue*, No. 4:09cv2732, 2011 WL 488712, at *10 (N.D. Ohio Feb. 7, 2011) (affirming ALJ's credibility determination where inconsistencies between plaintiff's testimony and evidence of record "cast doubt on the veracity of [p]laintiff's testimony and imply that [p]laintiff may not be as restricted as she purports").   *See also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

In addition to the above, the ALJ also discounted plaintiff's credibility based on her noncompliance with her medical providers' instructions to stop smoking and not put weight on her left leg, both of which contributed to delayed healing.   Plaintiff was instructed to not bear weight on her left leg, yet in October 2008 Dr. Klein noted that she had come to her follow-up visit using only one crutch and that her "continued weightbearing is clearly making the fracture not heal as it should."  (Tr. 234, 627-28).   Emergency room records from October 27, 2008, indicate that plaintiff was wearing a boot on her leg; there was no mention of crutches.   (Tr. 689).   Dr. Klein further advised plaintiff that smoking was likely a contributing factor in her delayed left-leg fracture healing, yet plaintiff continued to smoke.   (Tr. 625, 626, 627-28). Plaintiff failed to provide any explanation for this noncompliance.

18

Moreover, the ALJ cited to multiple objective and clinical findings supporting his determination that plaintiff's subjective complaints of pain were not well-supported by the medical evidence of record.   (Tr. 12-16).   Plaintiff testified that excruciating back pain prevented her sitting or standing for more than 10-15 minutes (Tr. 38), but as the ALJ noted, Dr. Klein found no negative physical examination findings in October 2008 and stated that there was no clear basis for this pain.   (Tr. 14, citing Tr. 625, 628).   Examination at the hospital on October 27, 2008, similarly revealed unremarkable physical examination results.   (Tr. 689). Further, there is no evidence of orthopedic treatment after November 7, 2008, indicating that plaintiff's back pain was adequately treated by Dr. Martinez.

The ALJ properly considered the relevant evidence of record and the requisite factors as set forth in 20 C.F.R. § 404.1529(c) and Social Security Ruling 96-7p.   (Tr. 12-16).   Contrary to plaintiff's contentions, the ALJ properly considered plaintiff's subjective complaints in light of the record evidence and determined that plaintiff was less than fully credible based on the inconsistencies between plaintiff's testimony, the medical evidence, and other evidence of record, and her noncompliance with her medical providers' instructions.   Though there is some medical evidence supporting plaintiff's testimony, as the ALJ's credibility determination is substantially supported it should not be disturbed by this Court.   *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

### 4.   <u>The ALJ did not present improper hypothetical questions to the VE</u>.

Plaintiff's final assignment of error asserts that the ALJ's Step 5 finding is erroneous because he failed to include supported limitations.   At the hearing, the ALJ posed a hypothetical to the VE regarding plaintiff's physical RFC for a limited range of sedentary work.   Plaintiff

contends the ALJ erred by not including limitations for her left shoulder, left arm, and neck, such as problems looking down.   Plaintiff also claims the ALJ erred by not addressing plaintiff's difficulties with sitting 6 hours a day and missing time from work (2-3 days a month) for physical therapy.   Lastly, plaintiff contends the ALJ erred by finding she had moderate limitations in persistence and pace but not accounting for them in the hypothetical presented to the VE.   (Doc. 6 at 9).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."   *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).   The Commissioner may meet his burden through reliance on a vocational expert's testimony in response to a hypothetical question.   To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's physical and mental limitations.   *See Ealy v. Comm'r of Soc. Sec.* 594 F.3d 504, 516 (6th Cir. 2010).

This statement of error is, in large part, simply a repeat of plaintiff's RFC arguments. The Court will not revisit plaintiff's reiterated claims in light of the above finding that the ALJ's RFC finding is substantially supported[6], but will focus on plaintiff's new contentions.   For example, plaintiff asserts the ALJ erred by not accounting for her difficulties with sitting for 6 hours a day.   However, the VE testified that the jobs identified in response to the hypothetical question would permit plaintiff to sit and stand at will (Tr. 53); consequently, the undersigned finds no error in this regard.

---

[6]For example, as discussed *supra,* the ALJ's RFC included limitations for plaintiff's left arm and shoulder impairments as he limited her lifting and carrying to 10 pounds occasionally and 5 pounds frequently.

As for plaintiff's subjective complaint that she has difficulty looking down, the ALJ did not err by failing to include this limitation in the hypothetical question to the VE.   As discussed above, the ALJ's finding that plaintiff's subjective reports of pain are not fully credible is substantially supported by the record and plaintiff has cited to no medical evidence supporting this subjective limitation.

Lastly, to the extent plaintiff argues the ALJ failed to include a limitation for her persistence and pace limitations when presenting the hypothetical question to the VE, this assertion is incorrect.   The ALJ determined that plaintiff had moderate difficulties in concentration, persistence or pace (Tr. 12) and posed a hypothetical question to the VE wherein plaintiff was limited to remembering and carrying out detailed but uninvolved instructions with not more than ordinary and routine changes in work-setting or duties or more than simple work-related decisions.   (Tr. 49).   The ALJ thus included appropriate limitations in the hypothetical question which addressed plaintiff's mental impairment.   Plaintiff's final assignment of error should be overruled.

## III.   Conclusion

It is hereby **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date:   5/2/2013                                                    s/Karen L. Litkovitz
                                                                        Karen L. Litkovitz
                                                                        United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TRACY E. KELTY,                                    Case No. 1:12-cv-272
      Plaintiff,                          Barrett, J.
                                                   Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).